# United States District Court
## Western District of Virginia
### Harrisonburg Division

|  |  |  |
|---|---|---|
| **VANESSA R. MARTIN,** | ) | Civil No.: 5:10cv00102 |
| *Plaintiff,* | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMENDATION** |
| **JO ANNE B. BARNHART**, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | By: Hon. James G. Welsh |
| *Defendant* | ) | U. S. Magistrate Judge |

Vanessa Martin brings this action challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 1381 *et seq*. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g). The Commissioner's Answer to the plaintiff's Complaint was filed on February 22, 2011 along with a certified copy of the entire record"("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered two days later, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

In her appeal the plaintiff contends the conclusion of the administrative law judge ("ALJ") that she retained the ability to perform her past relevant work as a cashier and as a babysitter was based on his erroneous rejection of the opinion of Robert Kennedy, M.D., her treating physician. In his response the Commissioner argues that Dr. Kennedy's opinion was properly rejected on the grounds that it was essentially a conclusory statement that the plaintiff was disabled, was not well-supported by medically acceptable clinical and laboratory diagnostic techniques, and was inconsistent with the other substantial evidence in the case record. Each party has moved for summary judgment; no written request was made for oral argument,[1] and the case is now before the undersigned for a report and recommended disposition.

The record shows that the plaintiff protectively filed her application on January 10, 2007; therein, she alleges that she became disabled on January 1, 2001 due to marked obesity and herniated discs at L4/5 and L5/S1 with attendant pain, heart problems, post traumatic stress disorder, endometriosis, a severe panic disorder, and anxiety. (R.33,99,103,111-112,121). After an administrative hearing (R.7-27), the presiding administrative law judge ("ALJ") issued an unfavorable decision (R. 33-47) on December 24, 2008. Her subsequent request for Appeals Council review was denied (R.1-4), and the unfavorable written decision of the ALJ now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481.

I.      **Summary and Recommendation**

---

[1] Paragraph 2 of the court's Standing Order No. 2005-2 requires that the plaintiff in a Social Security case must request oral argument in writing at the time his or her brief is filed.

Using the agency's five-step evaluation process, the ALJ made the following pertinent determinations: (1) the plaintiff had not engaged in substantial gainful work activity since she applied for SSI; (2) her obesity and herniated intervertebral discs are both *severe* [2] impairments; (3) she has no impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, appx. 1: and (4) based on consideration of the entire record, the plaintiff retained the functional ability to perform a limited range of light work. [3]

On appeal the plaintiff assigns error to the ALJ's finding that she retained the functional ability to perform sedentary work. This conclusion, she argues, was based on multiple decisional errors by the ALJ, including an erroneous rejection of the treating source opinion of Dr. Kennedy, an erroneous assessment of her credibility, and a failure to give the required consideration to the functional effect of her obesity.

After a careful review of the full record, the undersigned concludes there is substantial evidence in the record to support each of these determinations by the ALJ.

---

[2]  Quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2d 1012, 1014(4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. § 416.920(c).

[3]  "**Light work** involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. 404.1567(b) and 416.967(b)

## II. Standard of Review

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2$^d$ 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2$^d$ at 642). The court is "not at liberty to re-weigh the evidence . . . or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3$^d$ 650, 653 (4th Cir. 2005) (internal quotation marks omitted).

## III. Evidence Summary

At the time the plaintiff filed her SSI claim, she was thirty-six years of age.[4] (R.99,121-122). She had attended school through the ninth grade and subsequently obtained a general education diploma. (R.11,23). Her past relevant jobs included unskilled work as a clerk in a

---

[4] Under the agency's regulations, the plaintiff is classified as a "younger worker." 20 C.F.R. § 416.963(c).

4

convenience store, semi-skilled work as a child care monitor ("babysitter"), and unskilled work as a food preparer. (R.24,140,144-147). As regularly performed and as performed by her, the clerk and babysitting jobs are considered light in exertional level, and work as a food preparer is medium in exertional level. (R.24). She last worked in 2007 and earned approximately $7,000 babysitting two children. (R24-25,35)..

Her daily activities included caring for her four children (variously aged from 2 to 16 years at the time of the administrative hearing), fixing meals, washing dishes, grocery and clothes shopping, light housekeeping, changing diapers and fixing bottles for her infant child, and watching television. (R.12,14-15,21, 114-115,133-134).

Her medical history documents her treatment through Augusta Pain Management Center (Dr. Victor Lee) beginning in June 2002 for chronic low back pain associated with a central disc herniation at L5/S1 and a small right paracentral disc herniation at L4/5. (R.35,177,183). It documents her having undergone gastric bypass surgery in 2001. (R.175,187,232-233). Her medical history shows that between December 2003 and October 2006 she received her primary medical care from Stephen Schmitz, M.D., (Martha Jefferson - Afton Family Medicine). (R.182-183,189-228,273). It documents the termination of her care through Augusta Pain Management and termination of the medication she was simultaneously obtaining from Pantops Clinic because of her abuse of narcotic medications. (R.179, 183,186,219-220). Following her termination from these two programs, the plaintiff's medical history shows that she next sought pain medication through University of Virginia Pain Management Center; she was, however, referred for addiction assistance, which she declined. (R.43,182-185,235,286).

5

Presenting with a complaint of longstanding low back pain due to lumbar disc disease, the plaintiff began seeing Robert Kennedy, M.D., (North Augusta Family Practice) on October 19, 2006. (R.236). She reported having received no pain medication for two months, because she "went to a methadone clinic and broke her contract." (*Id.*). On examination the plaintiff was found to be in no acute distress; her lungs were clear, her heart rhythm and heart rate were normal; and her deep tendon knee reflexes suggested no significant abnormality bilaterally. (*Id.*).

Dr. Kennedy's office and related treatment records variously dated over the ensuing twenty-one months show that the plaintiff continued to see him with complaints of excruciating (5/5 on a pain scale) and worsening low back pain, as well as transient complaints of nausea, leg discomfort, generalized anxiety, pain all over, difficulty sleeping, left upper jaw dental pain and abscess, left ear pain, right-sided chest pain, left-sided lung pain, persistent cough, progressive shortness of breath, painful breathing, gastrointestinal distress, and nausea and vomiting secondary to narcotic withdrawal. (R.231-236,269-271,448-458). Additionally, they generally note her to be in no acute distress, to exhibit some discomfort, and to be morbidly obese. (R.235,271,448,455-458). At the time she was seen in November 2006, it was noted that she was self-medicating with methadone. (R.235). In February 2007 she was found to exhibit a full range of neck and shoulder motion and to have no gastrointestinal symptoms. (R.233). In July Dr. Kennedy reported that the plaintiff had no problem with balance and exhibited no significant mental health symptoms. (R.231,453). She was diagnosed with pneumonia at the time of an emergency room ("ER") visit in September 2007; she was admitted for IV and oxygen therapy, and she was discharged as "improved" on the third hospital day. (R.320-325,396-401,441-447,451). With complaints of lumbar back pain on October 9, 2007 the plaintiff sought

6

treatment through the Augusta Medical Center ER; she was found to have no heart or lung abnormality, normal deep tendon reflexes and full muscle strength; Vicodin was prescribed for her pain, and she was discharged to her home. (R.334,349). Later the same month, when she saw Dr. Kennedy, he noted that she was self-medicating with Percocet and that her nausea and related symptoms were secondary to narcotic withdrawal. (R.448).

Dr. Kennedy's office records dated between January and July 2008 suggest no significant change in the plaintiff's condition. She continued to present with multiple complaints of severe low back pain without an attendant lower extremity radiculopathy, dental pain, right-sided chest pain and abdominal pain. (R.453-458). And she continued to receive conservative treatment with various pain medications. (*Id.*).

As part of the administrative consideration of the plaintiff's SSI claim, the record was reviewed in March and again in June 2007 by separate state agency medical reviewers, and it was similarly reviewed by separate psychologists. (R.239-245,246-258,281-287,288-300). In each instance the medical reviewer found the record to demonstrate that the plaintiff had severe impairments, including degenerative disc disease, disc herniations at L4/5 and L5/S1, obesity and chronic pain. (R.244,286). Based on their separate reviews of the medical record, each found the plaintiff's statements concerning her symptoms and functional limitations to be only partly credible, and each further concluded the plaintiff retained the functional ability to perform work at a light exertional level that required only occasional postural activities. (R,230-241, 244, 282-283,286). In each instance the state agency psychologists concluded the plaintiff's

7

generalized anxiety disorder and post traumatic stress disorder only "mildly" limited her ability to function. (R,246-258,288-300).

In contrast to these detailed state agency reviews and assessments of the plaintiff's residual functional abilities, in March 2007 Dr. Kennedy opined that the plaintiff was "physically unable to work due to feelings of fatigue, tremulousness, and an unsteady gait. (R.260). In addition, he reported that she "ha[d] been diagnosed with degenerative disc disease, anxiety, PTSD, insomnia, and low back pain with an MRI showing disc herniations." (*Id*.).

## IV.   Discussion

The issue presented by the plaintiff on appeal is whether the ALJ erred by failing to give controlling decisional weight to Dr. Kennedy's opinion that she was "physically unable to work" due to multiple diagnosed conditions.

### A.

To be afforded controlling weight, as the plaintiff contends, this treating physician's assessment and conclusions must be well-supported by objective medical evidence. *Craig v. Chater*, 76 F.3$^d$ 585, 590 (4th Cir. 1996) (quoting 20 C.F.R. § 404.1527(d)(2)). In the record before the court, the requisite objective medical evidence is lacking.

As the ALJ appropriately noted in his decision, this opinion "appears to be simply [a] regurgitated from the [plaintiff] herself, one made "without [any] critical analysis," one made without identification of any work-related limitations. (R.46). In contrast, as the ALJ also noted,

8

the opinions of the state agency reviewers were based on specific references in the record and, therefore, entitled to more decisional weight. (*Id*.). Moreover, as outlined by the ALJ, neither Dr. Kennedy's medical records nor those of any other health care provider contain any supporting physical examination results, test results, laboratory finding, or other objective medical evidence to support Dr. Kennedy's conclusory opinion that the plaintiff has a disabling condition or conditions. (*See* R.41-46). In effect, the medical record in this case compels a rejection of Dr. Kennedy's opinion as not supported by substantial evidence.

Furthermore, Dr. Kennedy's conclusory opinion regarding whether the plaintiff is or is not disabled is entitled to no decisional weight, because the issue of disability is reserved for the Commissioner. *See* 20 C.F.R. § 416.927(e)

**B.**

On appeal the plaintiff also argues that the ALJ erroneously "rejected" her testimony regarding her pain and physical limitations "solely" because of her history of opioid medication abuse. On review, this contention mischaracterizes the ALJ's credibility determination and ignores the substantial evidentiary support in the record for his determination that the plaintiff was not disabled due to non-exertional pain or other symptoms.

In compliance with the agency's regulations, the ALJ in the instant case utilized the two-prong decisional process to make his credibility determination. (*See* R.37). First, he determined that there was objective medical evidence showing the existence of medical impairments, including herniated lumbar discs and morbid obesity, which could reasonably be expected to produce pain and the other alleged symptoms about which she testified. (R.37-46). *Craig v.*

9

*Chater*, 76 F.3<sup>d</sup> 585, 594 (4th Cir.1996) (citing 20 C.F.R. § 416.929(b) and 42 U.S.C. § 423(d)(5)(A)).

Then in accordance with the second decisional prong, the ALJ evaluated the "the intensity and persistence of the [plaintiff's] pain, and the extent to which it affects her ability to work." *Id.* at 595. In doing so, he identified the specific medical evidence which conflicted with her testimony of disabling pain, including *inter alia* her medical history, the conservative nature of her pain-related treatment, the consistency of her medical condition and her general appearance on examination over time, her favorable response to epidural steroid injections in 2006, the absence of loss of lower extremity function, her full range of neck and upper extremity function, her ability to ambulate without any assistive device, the scope of her daily activities (including her ability to drive and care for four children ranging in age from 2 to 16), his observations at the hearing, and "her willingness to prevaricate" about her receipt of narcotic medications from multiple sources. (R.12,39-43,44-46).

For all of these reasons the manner by which the ALJ concluded that plaintiff's testimony was "less than fully credible" is with the law and the evidence. It is supported by substantial evidence, and it more than adequately demonstrates the lack merit in the plaintiff's argument that the ALJ erred in his assessment of her credibility. Moreover, he had the opportunity to observe the demeanor and to determine her credibility; thus, his observations concerning this question are "to be given great weight." *Shively v. Heckler*, 739 F.2<sup>d</sup> 987, 989 (4th Cir. 1984).

**C.**

The plaintiff's additional claim is that the ALJ inadequately evaluated her obesity in making his residual functional capacity determination. In asserting this claim of error, however, the plaintiff ignores the ALJ's finding that her obesity was a severe impairment; she offers no specific physical impairment that she contends has been exacerbated by her weight, and she ignores the fact that obesity alone does "not correlate with any specific degree of functional loss." SSR 02-1p. Likewise, she ignores the absence of anything in the medical record itself that suggests the plaintiff's obesity has either resulted in or exacerbated any significant limitation in her ability to perform work activities of the type identified by the ALJ. Moreover, contrary to the plaintiff's claim that her obesity was not considered, the ALJ explicitly discussed her testimony regarding her size and weight (R.38); he took note of Dr. Lee's and Dr. Kennedy's references in their respective treatment records to her weight (R.39-40,43-45), and he took note of the fact that her weight was considered by the state agency reviewers in making their residual functional capacity assessments. *See Rutherford v. Barnhart*, 399 F,3$^d$ 546, 552-553 3rd Cir. 2005) (if the ALJ's decision demonstrates his reliance on a medical record that adequately demonstrates the claimant's obesity, that record may serve as the basis for his findings regarding her limitations and impairments without explicit mention of her obesity).

## D.

In this case it merits mention that the arguments presented by the plaintiff rely primarily on an implied contention that the ALJ improperly weighed the evidence. The court, however, must uphold the Commissioner's final decision if it is supported by substantial evidence. Although the plaintiff may disagree with the ALJ's determination, the record demonstrates that

11

each of the contested determinations was made by the ALJ after weighing the relevant factors. It is simply not the role of this court to re-weigh the conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3$^d$ at 589.

This recommendation that the Commissioner's final decision be affirmed, however, does not suggest that the plaintiff is totally free of pain and other subjective discomfort or does not have health issues. On review, the objective medical record simply fails to demonstrate that her condition during the relevant period was of sufficient severity to result in total disability from all forms of substantial gainful employment. The decision in this case for the court to make is "not whether the [plaintiff] is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3$^d$ 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3$^d$ at 589). Likewise, it is for the province of the Commissioner, not the court, to resolve conflicts in the evidence. *Hays v. Sullivan,* 907 F.2$^d$ 1453, 1456 (4th Cir. 1990).

## V. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful and thorough examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

12

1. The Commissioner's final decision is rational and in all material respects is supported by substantial evidence;

2. The ALJ considered the treating source opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p;

3. Substantial evidence supports the ALJ's rejection of the treating source opinion evidence upon which the plaintiff seeks to rely;

4. In his adjudication of the plaintiff's claims, the ALJ gave proper consideration to the objective and subjective evidence related to the plaintiff's pain and other subjective symptoms;

5. The ALJ properly resolved the evidentiary conflicts about which the plaintiff complains on appeal;

6. The Commissioner met his burden of proving that the plaintiff can do work that exists in significant numbers in the national economy;

7. The plaintiff has not met her burden of proving a disabling condition through the date she was last insured; and

8. All facets of the Commissioner's final decision should be affirmed.

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: this 29th day of February 2012.

s/ *James G. Welsh*
United States Magistrate Judge